594 So.2d 418 (1991)
Wayne A. GREENLEAF
v.
DHH, METROPOLITAN DEVELOPMENTAL CENTER.
Wayne A. GREENLEAF
v.
DHH, METROPOLITAN DEVELOPMENTAL CENTER.
Nos. CA 90 1847, CA 90 1848.
Court of Appeal of Louisiana, First Circuit.
December 27, 1991.
Writ Denied March 20, 1992.
*420 Ernest E. Barrow, II and Andree H. Greenleaf, Grant and Barrow, Gretna, for appellant.
Frank H. Perez and George D. Allspach, Dept. of Health and Hospitals, Bureau of Legal Services, Baton Rouge, for appellee.
Robert R. Boland, Jr., Civ. Service Gen. Counsel, Dept. of State Civ. Service, Baton Rouge, for Herbert L. Sumrall, Director, Dept. of State Civ. Service.
Before LOTTINGER, EDWARDS and GONZALES, JJ.
EDWARDS, Judge.
Appellant, Dr. Wayne Greenleaf, is a classified civil service employee with the Department of Health and Hospitals (DHH), Office of Mental Retardation, Metropolitan Developmental Center serving with permanent status. Dr. Greenleaf appealed the decision of the Civil Service Commission's confirming his ninety day suspension without pay pending an investigation and his subsequent demotion and transfer. We affirm.

FACTS AND PROCEDURAL BACKGROUND
At the time of the suspension without pay pending investigation, Dr. Greenleaf served as the Mental Retardation/Developmental Disabilities Regional Administrator 3 at the Metropolitan Developmental Center in Belle Chasse, Louisiana. The referee made the following findings of fact concerning the actions of Dr. Greenleaf upon which the disciplinary actions were based:
FINDINGS OF FACT
1. During fiscal year 1986/87, the Metropolitan Developmental Center had four cost reimbursement contracts with Vanco [Human Services, Inc. (Vanco)].
2. At the beginning of the fiscal year, Vanco received a cash advance in the amount of $37,454.00. The advance was to be repaid in four equal installments of $9,363.00 during the last four months of the fiscal year. The arrangement was proper and had the approval of the agency.
3. However, appellant directed that the May 1987 installment be delayed. The action was contrary to the advice of the Business Manager for the Metropolitan Developmental Center.
4. At the end of the 1986/87 fiscal year Vanco owed the state a balance of $3,410.48 on the amount which had been advanced. The Fiscal Officer for the Metropolitan Developmental Center wrote a letter to Vanco demanding payment. No response was received.

*421 5. Also, after fiscal year 1986/87 had ended, appellant instructed his Fiscal Officer to do a handwritten internal budget revision to Vanco contract No. 3427028, to authorize payment of a $28,209.60 invoice. The payment was for services for clients not named on the contract. It was against agency policy to pay for services to clients not named on a contract.
6. The contract in question was a cost reimbursement contract and required that for reimbursements to be made costs must actually be incurred for services to clients. However, no services were provided to the clients. Appellant's explanation for authorizing the payment was that Vanco had incurred expenses in anticipation of providing services to the clients. However, agency policy required that if a provider had a legitimate claim, then the contract must be amended to include the costs and to include the names of the clients.
7. After advising against making the $28,209.60 payment to Vanco, the Fiscal Officer followed appellant's instructions and made the payment after deducting the $3,410.48 that Vanco owed to the state.
8. Appellant did not personally benefit from the maneuvers channeling money from the state to Vanco. However, appellant's actions allowed Vanco to collect funds to which it was not entitled; and, appellant's actions delayed the recoupment of funds owed to the state by Vanco.
On August 8, 1988, Rose Forrest, the Deputy Assistant Secretary of the Office of Mental Retardation/Developmental Disabilities, sent Dr. Greenleaf a letter that notified him of the possibility of disciplinary actions against him and detailed with some specificity the alleged facts and actions of Dr. Greenleaf upon which the proposed disciplinary action would be taken. The letter also afforded Dr. Greenleaf the opportunity to respond before any formal action was taken. Dr. Greenleaf responded to the proposed disciplinary action and the allegations of fact by letter dated August 18, 1988. The appointing authority, the DHH, did not find that the response justified or adequately explained the actions taken by Dr. Greenleaf.
A verbal notice of a suspension without pay pending an investigation, and not to exceed ninety days, was given on August 25, 1988, followed by a confirmation letter on August 26, 1988. The suspension was effective on August 29, 1988. The August 26 letter stated that Dr. Greenleaf was being suspended because he "allowed the payment of $28,209.60 ... to Vanco Human Services, Inc. on July 29, 1987. This payment was based on an `internal' and unapproved modification to contract # 342-7028 that was in place between the Greater New Orleans Regional Service Center (Region 1/MDC) and Vanco Human Services, Inc." The allegations of fact that led the DHH to conclude that the payment was inappropriate were provided. Dr. Greenleaf filed an appeal of the suspension with the Civil Service Commission.
By letter from the Division of Mental Retardation dated November 28, 1988, Dr. Greenleaf was notified that he was being transferred and demoted, effective November 30, 1988, to Psychologist 3 at the New Orleans Adolescent Hospital and that his current rate of pay would be maintained. The letter states that the action was only after careful review of Dr. Greenleaf's letter in response to a letter dated November 1, 1988, advising him of the charges against him and the proposed disciplinary actions. The November 28 letter repeats the charges in the suspension letter and charges Dr. Greenleaf with improperly delaying the recoupment of funds owed to the state by Vanco. The demotion letter also informed Dr. Greenleaf that his suspension was being rescinded and that he would receive back pay and all the emoluments of office to which he may have been entitled.
Dr. Greenleaf filed a separate appeal of the demotion. The appeals were consolidated.
The DHH requested the Civil Service Commission to rescind the suspension in compliance with Civil Service Commission rule 15.10. Rule 15.10(c) prohibits modification *422 or rescission of any disciplinary action on appeal without approval of the commission. The request, however, was withdrawn by the appointing authority before the commission acted when the appointing authority was notified by the appellant that he would not dismiss the appeal of the suspension and would pursue other relief, even if the suspension was rescinded and back pay and emoluments of office were ordered. The correctness of the suspension remained on appeal and was argued at the hearing.
A referee was appointed and hearings held on May 11 and 12, 1989. The two days were not sufficient to conclude the testimony and it became necessary to schedule another hearing on July 27, 1989.
The referee issued his decision on January 25, 1990. The referee summarily dismissed appellant's request for the following:
1. The value of emoluments of office, including but not limited to, housing, utilities, and two hundred dollars per month in maintenance allowance.
2. Publication of a retraction, including one to those individuals with whom Rose V. Forrest has conferred regarding these allegations, exonerating Dr. Greenleaf from the implications of the charges levied by the appointing authority.
3. Return of all out-of-pocket expenses Dr. Greenleaf has paid to maintain health, accident and life insurance benefits for himself and his family.
4. Reimbursement to Dr. Greenleaf for all interest lost because standard payroll deductions to the Pelican State Credit Union and the State Employees Deferred Compensation Plan which could not be made, computed from the effective date of the unwarranted and unconstitutional suspension up to and until said amounts are repaid at the rate established by those employee benefit plans.
5. Reimbursement to Dr. Greenleaf for all expenses incurred in purchasing a house and moving his family because of state actions complained of herein.
The referee did not believe that the commission had jurisdiction to award the requested relief and stated that "[t]he maximum relief which can be granted to appellant in this instance is to restore appellant to his position, to restore appellant's lost wages as a result of the suspension, and attorney's fees...." The referee also summarily dismissed appellant's request for damages caused by the harassment of appellant by the news media and personal expenses caused by the disciplinary actions because of his belief that the commission lacked the authority to grant such relief.
The referee denied the appellant's claim that the appointing authority had violated Civil Service Commission rule 15.9 governing confidentiality of Civil Service Commission records while conducting the investigation and denied appellant's request for summary disposition of the suspension and both appeals. In the referee's conclusion of law, he stated the following:
The Referee finds that the agency has borne its burden of proving the charges in the letters of disciplinary action. Such conduct on the part of appellant impaired the efficient operation of the agency employing him and is just cause for disciplinary action. Both the suspension pending investigation and the subsequent demotion and transfer are warranted.
Dr. Greenleaf applied to the Civil Service Commission for review of the referee's decision. The application was denied on June 8, 1990, and the decision of the referee became that of the commission.
Dr. Greenleaf appealed the decision of the Civil Service Commission and listed seven assignments of error. Because of our affirmance of the decision, it is not necessary for us to consider assignment number six complaining of the unreasonableness of the amount allowed by Civil Service rule 13.35 for attorneys' fees when the disciplinary action is reversed or modified.

ASSIGNMENT OF ERROR ONE CONSTITUTIONAL CHALLENGE TO CIVIL SERVICE RULE 1.40 AND 12.2
Appellant asserts that the two *423 rules, 1.40 and 12.2,[1] "permit an appointing authority to deprive a permanent status classified civil service employee of property rights conferred by the constitution and laws of the State of Louisiana without legal cause in contravention of the provisions of" Louisiana Constitution article 10, § 8(A).
Rule 1.40 defines suspension and 12.2 covers the procedures for notice of the reasons for the action to the employee, the time an employee can be suspended without the specific approval of the commission, and the rescission of a suspension found to be unwarranted. Neither of these rules allow the commission to suspend an employee without cause. Rule 12.1 is the introductory article in Chapter 12 covering disciplinary actions. Rule 12.1 provides that "[a]n appointing authority may take appropriate action to remove, suspend, demote, reduce in pay, reassign or reprimand an employee for cause." The rules cannot be read in isolation and used as support for appellant's argument.
We find none of the constitutional infirmities asserted by appellant in the rules in question. This assignment lacks merit.

ASSIGNMENT OF ERROR TWO CONSTITUTIONAL CHALLENGE OF CIVIL SERVICE COMMISSION RULES 13.15, 13.17, AND 13.18
Appellant asserts that these three rules[2] are unconstitutional because they *424 impermissibly infringe upon appellant's interest in a speedy resolution of the controversy and do not guarantee adequate fundamental due process procedures. Dr. Greenleaf argues that too much time elapsed between the appeals and the hearings, between the hearings and the referee's decision, and between the referee's decision and the denial by the commission of Dr. Greenleaf's application of review.
Rule 13.15 requires that the hearings be fixed in the order docketed if practicable and disallows a change in the fixing except for good cause shown. Rule 13.17 requires notice to the parties of the hearing and requires consent of the parties before notice can be waived. Rule 13.18 allows for continuances if the continuance can be granted without prejudice to the appellant. We find no constitutional infirmity in these rules on their face or as applied to Dr. Greenleaf.
These proceedings were complex and both sides filed numerous documents and memoranda. The record contains no evidence of intentional delay by the commission or impermissible delay in violation of the rules. The record contains no evidence of complaints by the appellant to the delay in setting the appeals for hearing. When the two days allotted were not sufficient, another day was set for the hearing. An opening could not be found until July 27, 1989, because of the conflict of previously scheduled hearings and vacation schedules.
We agree that the commission should make every effort to timely decide these cases, but we do not find that the five months that elapsed between the submission of post hearing memorandum by appellant and the decision was unreasonable under the circumstances. Under another set of circumstances, especially a case with an ongoing suspension or a termination, an unreasonably long delay may infringe on an appellant's right to due process. See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 1496, 84 L.Ed.2d 494 (1985). Appellant filed no request for an expedited hearing or decision. He did not complain on the record of the delay in handing down the decision or denying the application for review while they were pending. "The chronology of the proceedings set out in the" appeal, "coupled with the assertion that" the elapsed time "was too long to wait, does not state a claim of a constitutional deprivation." Loudermill, 105 S.Ct. at 1496. The time periods, though long, do not amount to violations of appellant's due process rights in this case.

ASSIGNMENT OF ERROR THREE DUE PROCESS REQUIREMENTS IN PRE-DEPRIVATION PROCEDURES
Appellant complains of inadequate due process protection in the pre-suspension and pre-transfer and demotion procedures provided.
A review of the record reveals that Dr. Greenleaf was notified in writing, with great specificity, of the charges against him and of the proposed disciplinary actions before any formal action was taken. Dr. Greenleaf was afforded the opportunity to respond and did so, in writing. No action was taken until the response had been reviewed. The proper notices of the suspension and of the subsequent demotion and transfer were sent. Dr. Greenleaf responded to the charges against him and the *425 proposed disciplinary transfer and demotion. A hearing was held before an appointed referee, a decision was rendered, and all appeal procedures were properly relayed to appellant. We find no merit in appellant's argument that the Secretary of DHH must read all of the record before he authorizes a disciplinary action and cannot rely on staff reports and information given to him during a meeting at which the proposed action was considered by staff members who reviewed all of Dr. Greenleaf's responses. We find that the essentials of due process were met in the pre-deprivation proceedings. See Ayio v. Parish of West Baton Rouge School Board, 569 So.2d 234, 236-37 (La.App. 1st Cir.1990).

ASSIGNMENT OF ERROR FOUR REDRESS OF DAMAGES CAUSED BY INTENTIONAL PUBLICATION OF ALLEGATIONS AGAINST APPELLANT
Appellant claims that the commission erred in failing to consider material facts regarding actions of DHH which caused damage to Dr. Greenleaf's reputation by the intentional publication of the allegations against Dr. Greenleaf and erred in denying Dr. Greenleaf adequate due process to redress that injury. Specifically, appellant asserts a violation of Civil Service Commission rule 15.9.
The record contains little evidence on these issues. The only direct reference to actions of DHH was the testimony of Rose Forrest. Ms. Forrest testified that when stories began to circulate in the local newspapers and in the community about the payments to Vanco by Dr. Greenleaf, she held a meeting for the staff at the Metropolitan Developmental Center (MDC) in Belle Chasse to advise them of the allegations against Dr. Greenleaf and the ongoing investigation. She confirmed the facts known to her and that Dr. Greenleaf had been suspended. She spoke to the MDC parents support group and confirmed the action taken against Dr. Greenleaf and the charges made against him. Ms. Forrest testified that her goal was to quell the rumors circulating at that time about arrests and possible grand jury indictments. Nothing in the record indicates that DHH intentionally leaked any of the charges or disciplinary actions to the press before they became a matter of public record. Most of appellant's arguments in this area are based on the torts of defamation and invasion of privacy.
Louisiana Constitution article 10, § 12 grants to the Civil Service Commission "the exclusive power and authority to hear and decide all removal and disciplinary cases...." Article 10, § 10 provides broad rule making power. The constitutional provisions that delegate judicial authority to the commission are narrowly construed because they are exceptions to the general rule that district courts have jurisdiction over all civil matters under Louisiana Constitution article 5, § 16(A). In re Investigation of Smith, 546 So.2d 561, 563 (La. App. 1st Cir.), cert. denied, 550 So.2d 636 (La.1989). The Civil Service Commission has no subject matter jurisdiction over tort cases and cannot award monetary damages for these types of wrongful behavior. See Moore v. Board of Supervisors of Louisiana State University and Mechanical College, 559 So.2d 548, 549-50 (La.App.2d Cir.1990). See also Wheeler v. Dept. of Public Safety, 500 So.2d 786, 791 (La.App. 1st Cir.1986). We find no error in the referee's actions.
Appellant does point to a specific Civil Service rule covering the confidentiality of Civil Service records and claims a violation. We find that the actions of Rose Forrest representing the DHH in talks with the MDC staff and the parents' group did not violate rule 15.9.[3] Neither the commission *426 nor the director conducted the investigation of the charges against Dr. Greenleaf.

ASSIGNMENT OF ERROR FIVE SUMMARY DISPOSITION
Appellant assigns error to the referee's summary disposition of certain items of relief requested by him. Dr. Greenleaf argues that Civil Service rule 13.14 was violated when (1) the appointing authority failed to send notice to appellant of any motion for summary disposition and (2) the referee allowed the appointing authority to orally move for summary disposition. Dr. Greenleaf asserts that the referee erred by improperly summarily disposing of his requests for relief and by not allowing Dr. Greenleaf to submit evidence on the items requested.
Rule 13.14[4] provides that when any request for summary disposition that is to be supported by "admissions of fact and written *427 argument or brief," the adverse party must be served with "a copy of each such instrument." Civil Service Commission rule 13.14(b). The rule does not require that all motions for summary disposition be served on the adverse party or prohibit an oral motion. Rule 13.14(d) allows the commission or the referee to summarily dispose of an appeal on any of the grounds listed in 13.14(a) on its or his own motion. We find no violation of rule 13.14 in the referee's allowing the appointing authority's oral motion for summary disposition.
The referee granted the motion for summary disposition and denied the items of relief requested by Dr. Greenleaf because the referee believed that the commission did not have the authority to grant such relief. The referee stated that the commission could only reinstate the appellant, order back pay, and grant attorney fees.
The referee erred in his statement. The commission, upon a modification or reversal of a disciplinary action, can reinstate an appellant to his position, order back pay, restore benefits and the emoluments of office, and can grant attorney fees. See Ducote v. Charity Hospital of Louisiana, 388 So.2d 420, 424 (La.App. 1st Cir.1980); Murray v. Dept. of Revenue & Taxation, 543 So.2d 1150, 1153 (La.App. 1st Cir.1989); Lombas v. New Orleans Police Department, 501 So.2d 790, 791 (La. App. 4th Cir.1986). The referee should have allowed evidence to be submitted on items that fell within those categories. However, some of the items requested by appellant do not fit within any of the categories of relief that can be granted by the commission. The commission can restore benefits, but it cannot grant an award for monetary damages based on tort or contract law or order relief appropriate in a defamation suit. See Wheeler, 500 So.2d at 791; Moore, 559 So.2d at 549.
The error by the referee did not taint the result in this case and is not fatal error. The affirmance of the disciplinary actions renders the need for a determination of what items could be granted upon a reversal or modification of the actions moot.

ASSIGNMENT OF ERROR SEVEN DISCIPLINARY ACTIONS
Appellant assigned error to the commission's findings of fact and the commission's upholding of two disciplinary actions based on "`one isolated incident.'" Appellant also complains of the improper grant of authority by Civil Service rule 15.10(c) for rescinding suspensions.
When an appeal has been filed, the commission obtains jurisdiction over the matter. Rule 15.10(c) prohibits modification or rescission of a disciplinary action without the approval of the commission. In this case, the appeal of the suspension was filed before the request for recision was made. The request was withdrawn, however, before the commission acted. We find no improper delegation of authority in the rule and no improper use of authority by the commission. See La. Const. art. 10, § 12.
A reviewing court should not disturb the factual findings made by the commission in the absence of manifest error. Walters v. Department of Police of New Orleans, 454 So.2d 106, 113 (La.1984). We have carefully reviewed the record and find no manifest error by the commission.
A permanent classified civil service employee cannot be disciplined without cause. Cause exists whenever the employee's conduct is detrimental to the efficient and orderly operation of the public service that employed him. Claverie v. L.S.U. Medical Center, 553 So.2d 482, 487 (La. App. 1st Cir.1989). An appellate court should not reverse the commission's determination of the existence of cause for a disciplinary action unless the decision is arbitrary, capricious or an abuse of discretion. Walters, 454 So.2d at 113; Claverie, 553 So.2d at 487.
The evidence presented established that the appellant insisted upon the fiscally irresponsible actions of delaying recoupment of state funds and issuing a check to Vanco without the proper authorization in spite of contrary advice by his fiscal officers. These actions impaired the efficient *428 and orderly operation of the agency. After a thorough review of the record, we find that the decision of the commission was not arbitrary, capricious or an abuse of discretion.
The decision of the commission is affirmed. The costs of the appeal are assessed against the appellant.
AFFIRMED.
NOTES
[1] 1.40 `Suspension' means the enforced leave of absence without pay of an employee for disciplinary purposes, or during an investigation of alleged misconduct by the employee. 12.2 Suspensions.

(a) Any permanent employee who is suspended without pay shall be so notified by his appointing authority or his authorized agent on or before the effective time and date of the commencement of the suspension. Each permanent employee so suspended shall be furnished detailed reasons therefor in writing prior to or within fifteen (15) calendar days following the effective date of the suspension. A copy of such detailed reasons shall be furnished to the Director. For each permanent employee so suspended, the notice containing the detailed reasons for the suspension shall contain the notification of the right to appeal required by Rule 12.3(a)2 below. The written notice containing detailed reasons for the suspension referred to in this paragraph shall be deemed furnished to the employee under the circumstances specified in Rule 12.3(b) below.
(b) No suspension shall exceed ninety (90) calendar days without the approval of the Commission.
(c) If the employee's conduct, ability, or performance is found after investigation to be such as not to warrant the suspension levied, a written report of the outcome of the investigation shall be furnished to the Director. With the approval of the Director, the suspension, or a portion thereof, shall be rescinded and the employee shall be paid for the time lost as a result of the unwarranted suspension.
(d) For purposes of this Rule, "detailed reasons" shall include, at least a description of the misconduct for which the suspension is being levied and shall include the date, time and place of such misconduct, the names of persons directly involved in or directly affected by the misconduct (unless their identities are protected by state or federal statute or regulation, in which case, identification shall be made as permitted by such statute or regulation) and such other information as will fully inform the employee of the charge against him and will enable him to prepare a defense. If a suspension is levied for the purpose of investigating suspected misconduct, "detailed reasons" shall include at least a description of the nature of the misconduct suspected, a general time frame in which the conduct is suspected to have occurred, the names of persons directly involved in or directly affected by the suspected misconduct (unless their identities are protected by state or federal statute or regulation, in which case, identification shall be made as permitted by such statute or regulation) and such other information that is available to the appointing authority that will inform the employee what misconduct is being investigated.
[2] 13.15 Assigning Appeals for Hearing.

The Director shall fix the time and place for the hearing of appeals by the Commission, and, as far as practicable, shall fix them in the order in which docketed, provided that, for good cause shown, the Commission, its Chairman, or the Director may upset any fixing and may either relegate the case for refixing to the foot of the docket or give it a special assignment both as to time and place. If a referee has been appointed to hear an appeal, he shall fix the time and place for hearing and appeal and may upset and refix same.
13.17 Notice of Hearing of Appeals.
(a) For all hearings conducted after July 1, 1982, and subject to the provision of Subsection (b) hereof, notice of the time and place fixed for the hearing shall be mailed to the appellant and to the authority against whose action the appeal has been taken at least thirty (30) calendar days prior to the date of the hearing.
(b) With the approval of the Commission, the Director, or the appropriate referee, and by consent of all interested parties, said notice and delay may be waived.
13.18 Continuance of Appeal.
(a) An appeal fixed for hearing may be continued, without prejudice to the appellant.
1. By the Director, or the appropriate referee in a referred case, upon submission of justifications deemed adequate by the Director or the referee; or
2. By the Commission or its Chairman, for cause deemed sufficient by it; or him; or
3. If it is not reached for hearing.
(b) With the approval of the Commission, the Director, or the appropriate referee, an appeal fixed for hearing may be continued by consent of all interested parties. If an appellant requests a continuance the Commission or the referee, may, in its or his discretion, deny him any compensation for that portion of time lost by reason of the continuance if his appeal be finally sustained.
[3] 15.9 Records of the Department of Civil Service.

(a) The Department of Civil Service shall be the official depository of the records of the Department and the Commission.
(b) Subject to the provisions of Sub-section (c) hereof, all records so deposited shall be public records and their inspection, availability and regulation shall be subject and governed by the statutory provisions governing public records and documents.
(c) The following records shall be held confidential:
1. Investigation correspondence and data related to the moral character and reputation of applicants for employment or employees in the Classified service.
2. Examination materials, questions, data and examination papers and records relating in any way to competitive examinations and other tests constructed, maintained, or conducted by the Department of Civil Service.
3. Files, statements, reports, correspondence and other data in connection with and related to investigations of violations of the Article or Rules, when such inquiries are conducted by the Commission or the Director, other than that which is admitted in evidence at a public hearing.
4. Files, statements, reports, correspondence and other data collected in the course of salary surveys which identify private corporations with the actual salary rates and practices of that organization; or that reveal organizational characteristics that would make the corporation easily identifiable.
5. Any decision of the Commission on an appeal or any contents thereof until the day that the decision is filed with the Director in accordance with Rule 13.28.
6. Any proposed decision of the Commission on an appeal or any contents thereof prepared by a Commission member or by a referee, until the decision is filed with the Director in accordance with Rule 13.28.
[4] 13.14 Summary Disposition of Appeal.

(a) At any time after the docketing of an appeal a written request may be filed by any interested party for summary disposition thereof on any of the following grounds:
1. That the Commission lacks jurisdiction of the subject matter, or of the person against whom relief is sought.
2. That the appellant has no legal right to appeal.
3. That the appeal has not been made in the required manner or within the prescribed period of delay.
4. That the appeal has become moot.
5. That an appellant has failed to appear at the time fixed for the hearing of his appeal, without having been granted a continuance.
6. That the written notice expressing the cause for the action complained against is insufficient; or, that the cause as expressed does not constitute legal ground for the disciplinary action.
7. That the disciplinary action was not taken by the proper appointing authority.
(b) Any request for summary disposition when made prior to the date fixed for the hearing of the appeal may be supported by admissions of fact and written argument or brief; provided, that
1. Before filing, the Director shall require proof of service of a copy of each such instrument on the adverse party, together with the date of such service; and
2. The adverse party shall have fifteen (15) calendar days after such service, or until the date of the hearing, whichever is sooner, to file with the Director an opposition to the request which opposition may be supported by written argument or brief.
(c) If the Commission or a referee denies the request or refers it to the merits, it or he may reconsider same at any time prior to its or his final disposition of the appeal.
(d) The Commission or a referee, on its or his own motion, may at any time summarily dispose of an appeal on any of the grounds listed in Subsection (a) hereof or in accordance with the provisions of Rule 13.19(e).
(e) When the Commission summarily disposes of an appeal, its decision shall be final on the date it files its written decision with the Director disposing of the case. On the same date that the decision is filed with the Director, the Director shall mail a copy of the decision to the parties. When a referee summarily disposes of an appeal his decision shall be final in accordance with the provisions of Rules 13.20 and 13.36.
(f) By filing with the Director a written notice of his intention to do so, an appellant may withdraw or abandon his appeal at any time prior to the hearing thereof by the Commission or a referee if his request is approved by the Director. After an appeal has been heard by the Commission or a referee, it may be withdrawn or abandoned only with approval of the Commission or the referee. The Director shall promptly notify all interested parties of any such withdrawal or abandonment.